ACCEPTED
13-15-00188-CV
THIRTEENTH COURT OF APPEALS
CORPUS CHRISTI, TEXAS
6/11/2015 4:48:09 PM
CECILE FOY GSANGER
CLERK

## CAUSE NO. 13-15-00188-CV

IN THE COURT OF APPEALS
FOR THE THIRTEENTH DISTRICT OF TEXAS
AT CORPUS CHRISTI, TEXAS

FILED IN
13th COURT OF APPEALS
CORPUS CHRISTI/EDINBURG, TEXAS
6/11/2015 4:48:09 PM
CECILE FOY GSANGER
Clerk

## DONNIE DOYLE BROWN,
### APPELLANT,

## VS.

## CORPUS CHRISTI REGIONAL TRANSPORTATION AUTHORITY,
### APPELLEE.

APPEALED FROM THE COUNTY COURT AT LAW NO. 1, NUECES
COUNTY, TEXAS

### THE HONORABLE ROBERT VARGAS

---

### BRIEF OF APPELLANT, DONNIE DOYLE BROWN

LAW OFFICE OF KEN HANNAM
PARK GREEN ATRIUM
4444 CORONA DRIVE, SUITE 119
CORPUS CHRISTI, TEXAS 78411
TEL: (361) 853-8833; FAX: (361) 853-8946

### ATTORNEY FOR APPELLANT

### ORAL ARGUMENT REQUESTED

# NAMES OF ALL PARTIES AND THEIR COUNSEL

## APPELLANT

DONNIE DOYLE BROWN

## TRIAL & APPELLATE COUNSEL

KEN HANNAM
Law Office of Ken Hannam
Park Green Atrium
4444 Corona Drive, Suite 119
Corpus Christi, Texas 78411
Tel: (361) 853-8833
Fax: (361) 853-8946
E-Mail: kenhannamlaw@yahoo.com

## APPELLEE

CORPUS CHRISTI REGIONAL TRANSPORTATION AUTHORITY

## TRIAL COUNSEL

THOMAS A. SILVER
Dunn, Weathered, Coffey, Rivera & Kasperitis, P.C.
611 South Upper Broadway
Corpus Christi, Texas 78401
Tel: (361) 883-1594
Fax: (361) 883-1599
E-Mail: tsilver@dwcrk.net

## APPELLATE COUNSEL

KEN FIELDS
McKibben & Villarreal
555 North Carancahua, Suite 1100
Tel: (361) 882-6611
Fax: (361) 883-8353
E-Mail: kfields@mcv-law.com

# TABLE OF CONTENTS

Page #

I.    Names of All Parties and Their Counsel ……………………………….....i

II.   Table of Contents ………………………………………………....ii&iii

III.  Index of Authorities ……………………………………...............iv

IV.   Statement of Case ……………………………………….2

V.    Statement Regarding Oral Argument …………………………….2

VI.   Issues Presented ………………………………….2

VII.  Statement of Facts ……………………………………………….3

VIII. Summary of Argument …………………………………….....5

IX.   Standard of Review …………………………………….8

X.    Argument and Authorities …………………………….......9

      -     The Law ……………………………………………....9
      -     The Circumstantial Evidence of "Subjective Awareness of Fault" …12
            1.    Argument on "Highly Intoxicated" …………………….13
            2.    Other Cases Distinguished …………………………14
            3.    Purpose of Notice Requirement Satisfied …………….15

XI.   Conclusion …………………………………….....16

XII.  Prayer …………………………………………….16

XIII. Certificate of Service……………………………………….17

XIV.  Certificate of Compliance…………………………………....18

XV. **Appendix** .............................................19

1. Order Granting Plea To The Jurisdiction .....................19

2. Corpus Christi Police Accident Report .....................19

3. RTA – Bus Driver Report .....................19

4. RTA – Supervisor Report .....................19

5. Photographs of side of Bus and Driver's side view mirror .............19

6. RTA rules on checking right mirror for passengers running to catch the bus & so on .....................19

7. Donnie Brown's Affidavit .....................19

8. Caller.com – Audit – RTA should work on reducing accidents .......19

# INDEX OF AUTHORITIES

**Cases**                                                                                       **Page #**

- *Casso, M.D. vs. Brand 776 SW2d 551, 558 (Tex. 1989)* ....................9&16

- *City of Dallas vs. Carbajal 278 SW2d 802, 804 (Tex. App. – Dallas 2009) rev. o.g. 324 SW3d 537 (Tex. 2010)* ...........................................11

- *City of Dallas vs. Carbajal 324 SW3d 537 (Tex. 2010)* ....................14

- *Ortiz Guevara vs. City of Houston 2014 WL 1661, 837 p4 (Tex. App – Houston [14th Dist.] 2014)* ...........................................7&11

- *Marsaglia vs. The University of Texas El Paso 22 SW3d 1, 4 (Tex. App. – El Paso, 1999, pet denied)* ...........................................9

- *Muniz vs. Cameron County 2012 WL 1656326 (Tex. App – Corpus Christi May 2012)* ...........................................14

- *Ridgway vs. Ford Motor Company 82 SW3d 26, 29 (Tex. App – San Antonio 2002) rev'd o.g. 135 SW3d 598 (Tex. 2004)* ...........................9

- *Texas Department of Criminal Justice vs. Simons 140 SW3d 338, 334 – 348 (Tex. 2004)* ...........................................6&10

- *Texas Department of Parks & Wildlife vs. Miranda 133 SW3d 217, 226 (Tex. 2004)* ...........................................8

- *Texas Department of State Health Services vs. Gonzalez 2014 WL 7205332 (December 2014)* ...........................................15

- *University of Texas Southwestern Medical Center at Dallas vs. Estate of Arancibia 324 SW3d 544, 549, 550 (Tex. 2010)* ....................6&11

## Statutes, Codes, & Rules

- Texas Civil Practice & Remedies Code §101.101

- Texas Government Code §311.034

iv

# CAUSE NO. 13-15-00188-CV

IN THE COURT OF APPEALS
FOR THE THIRTEENTH DISTRICT OF TEXAS
AT CORPUS CHRISTI, TEXAS

---

## DONNIE DOYLE BROWN,
### APPELLANT,

## VS.

## CORPUS CHRISTI REGIONAL TRANSPORTATION AUTHORITY,
### APPELLEE.

APPEALED FROM THE COUNTY COURT AT LAW NO. 1, NUECES
COUNTY, TEXAS

### THE HONORABLE ROBERT VARGAS

---

### BRIEF OF APPELLANT, DONNIE DOYLE BROWN

TO THE HONORABLE COURT OF APPEALS:

NOW COMES Donnie Doyle Brown and respectfully submits his brief in support of his appeal.

-1-

## IV.
## <u>STATEMENT OF THE CASE</u>

This is a personal injury case involving a bus and pedestrian brought pursuant to the Texas Tort Claims Act.

Mr. Brown did not give written notice of his claim to the RTA but alleged they had actual notice. Written notice is a jurisdictional requirement.

The RTA filed a Plea to the Jurisdiction stating they knew of the accident but did not have "actual subjective awareness of its fault."

The Trial Court granted their Plea to the Jurisdiction and dismissed the case.

Appellant, Donnie Doyle Brown, will be referred to as Mr. Brown and the Appellee, Corpus Christi Regional Transportation Authority will be referred to as the RTA.

## V.
## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Oral argument will aid the Court's decisional process by addressing (1) any questions the Court may have on the circumstantial evidence and (2) how that evidence creates a fact issue on whether the RTA had "actual subjective awareness of their fault."

## VI.
## <u>ISSUES PRESENTED</u>

The principal issue is whether the Trial Court erred in granting the RTA's Plea to the Jurisdiction.

The answer to that issue depends on whether or not Mr. Brown raised a fact issue that the RTA had "actual subjective awareness that its fault produced or contributed to the claimed injury."

## VII.
## STATEMENT OF FACTS

On May 04, 2012, Mr. Brown was attempting to board a RTA bus on South Alameda Street near the intersection of Texas Trail when the bus driver suddenly drove off with his arm stuck in the rear bus door, dragging him and causing him to fall to the street. The bus ran over his left arm seriously injuring him (TR – 8 & 111 - 112).

The bus driver, Angelo Franzone, immediately notified RTA dispatch to call 911 (TR – 35 – 37).

The Corpus Christi Police prepared a report (TR – 93 – 97) that described the accident and noted "#59" under "Factors & Conditions' that "Pedestrian FTYROW to vehicle." No specific factor was attributed to the bus driver, however, the police photographer did note "I photographed the scene, including the view from the driver's seat of the right side mirror" (TR 47 & 97). Photographs of the right side mirror show a clear and unobstructed view of the side of the bus and bus stop (TR – 85 – 92).

Written statements were made by the bus driver, Angelo Franzone (TR – 35 – 37) and RTA Supervisor Charles Rogers (TR38 – 40) stating that

Mr. Brown was "running" behind my bus or "hurrying after the bus and then fell or stumbled. RTA's Director of Safety & Security, Mike Pefanis, also present at the accident scene, wrote a "Vehicle Collision Rating" a month later that the accident was "Non-Preventable" (TR – 130). The police and RTA reports show no indication of talking with Mr. Brown about how the accident occurred. He, of course, was taken to the hospital for surgery.

The lawsuit was filed twenty-three months later on March 28, 2014. Mr. Brown never gave written notice of his claim to the RTA within six months of the accident but alleged the RTA had actual notice of the incident in accord with §101.101 of the Texas Tort Claims Act (TR – 8).

Some initial written discovery was exchanged when the Plaintiff's attorney filed a Motion To Compel Discovery (TR – 18) and the RTA responded with a Plea To The Jurisdiction (TR – 65).

Attached to their Plea was an Affidavit of Mike Pefanis – RTA Director of Safety & Security dated September 19, 2014, which states for the first time that Mr. Brown was "reportedly highly intoxicated at the time of the incident," (TR – 77).

Mr. Brown's Response To The Plea To Jurisdiction (TR – 79) attached an Affidavit of Donnie Brown (TR – 111) stating his arm got stuck in the door and could not get free until he tripped and fell under the wheels of the bus. He also

-4-

denied he was intoxicated. Mr. Brown also objected to Mr. Pefanis' hearsay affidavit (TR – 113).

The Trial Court allowed Mr. Brown limited additional discovery (See Docket Sheet TR – 177) to learn of (1) the bus driver's RTA driving record and (2) obtain the RTA's bus manual regarding bus passenger procedures.

The additional discovery showed the bus driver had, at least, two prior bus accidents involving the right side of the bus (TR – 128; 138 & 139) and a bus manual (TR – 149 – 168) that required bus drivers to:

1. "Check your right mirror for passengers running to catch the bus," (TR – 153);

2. "To prevent collisions give passengers… More Time," (TR – 153);

3. "Check doors to make sure they're clear," (TR – 152); and several other bus rules the bus driver violated.

More on this in argument.

A second hearing on the RTA's Plea To The Jurisdiction was held on March 26, 2015 and the Court granted the Plea which led to this appeal.

## VIII.
## SUMMARY OF ARGUMENT

### The Law

The Texas Tort Claims Act §101.101 requires a claimant to give written notice to a governmental unit of his claim reasonably describing (1) the injury claimed; (2) time and place of the incident; and (3) the incident. This is a

jurisdictional requirement. An exception to the requirement is if the governmental unit has actual notice.

The Supreme Court of Texas in *Texas Department of Criminal Justice vs. Simons 140 SW3d 338, 344 – 348 (TEX. 2004)*; stated "actual notice" to a governmental unit requires knowledge of... (2) the governmental unit's alleged fault (in) **producing** or **contributing** to the death, injury, or property damage (emphasis added) p. 344. The Court also said that "actual notice" includes subjective awareness of its fault," p. 347. **"We have long held that actual notice is a fact question when the evidence is disputed.** In many instances, however, actual notice can be determined as a matter of law. **There will be times when subjective awareness must be proved, if at all, by circumstantial evidence,"** p. 348 (emphasis added).

In *University of Texas Southwestern Medical Center at Dallas vs. Estate of Arancibia, 324 SW3d 544, 549, 550 (Tex. 2010)* the Supreme Court said a governmental unit cannot disclaim subjective awareness by alleging its investigation found no breach of duty or of standard care. Fault is not synonymous with liability.

"No court has held that fault must be exclusively the governmental unit's. Rather, the Plaintiff must present **some** evidence of the city's knowledge that it

produced or **contributed** to the injury." _Ortiz Guevara vs. City of Houston, 2014_ _WL 161 837, p.4 (Tex. App. – Houston (14th Dist.) 2014)_ (emphasis added).

## The Circumstantial Evidence

The notion the RTA safety director did not know the RTA bus driver was at fault is not credible!

The circumstantial evidence that the RTA actually knew they were at fault is as follows:

1.  The RTA driver actually drove his RTA bus over Mr. Brown's left arm. His bus surely produced or contributed to the injury!;

2.  Although only two persons were involved, Mr. Brown and Mr. Franzone, the bus was the "sole instrument" of injury. The RTA may want to argue comparative fault, but surely the bus driver's fault contributed or produced the injury;

3.  This is a motor vehicle accident and virtually every motor vehicle accident is caused in whole or part, by a failure to keep a proper lookout, stop or brake. Obviously this bus driver did not see Mr. Brown in time or stop and that is evidence of fault and raises a fact issue; How could the RTA not know of its fault?;

4.  The police photographed the bus driver's side view mirror which showed a clear view of the side of the bus and bus stop. What was the police photographer's purpose or thought in photographing this? To ask the question "why didn't you see Mr. Brown?;

5.  The following bus driving rules were violated or ignored by the bus driver:

    -   "Check your right mirror for passengers running to catch the bus" (TR – 153);

- "Check doors to make sure they are clear before closing and leaving" (TR – 152); and

- "To prevent collisions give passengers with mobility problems, packages, or intoxicated passengers… More time and More distance!" (TR – 153).

The Director of Safety & Security, Mike Pefanis, ignored these rules in his accident analysis. These rules surely were made to avoid the type of accident the basis of this lawsuit.

6.    The bus driver had two prior accidents that were similar or relevant to Mr. Brown's accident (TR – 128; 138 – 139). The Director of Safety & Security had to know this.

7.    The RTA had a 2012 bus audit that concluded the RTA had too many preventable accidents (TR – 106 – 108).

Mr. Brown argues the RTA actually knew they were at fault, in whole or in part. They just did not want to admit it because the police did not note the bus driver was at fault. But the police did not know of RTA bus rules violated nor did the police talk to Mr. Brown. A trial is needed to determine the credibility of the RTA people. That is a fact issue.

## IX.
## STANDARD OF REVIEW

A plea to the Jurisdiction challenges the Trial Court's jurisdiction over the subject matter. Subject matter jurisdiction is a question of law; therefore an appellate court reviews de novo a trial court's ruling on a plea to the jurisdiction *Texas Department of Parks & Wildlife vs. Miranda 133 SW3d 217, 226 (Tex. 2004)*.

The standard review of evidence "generally mirrors" that of a traditional motion for summary judgment (Id. – 228).

The Court will take as true all evidence favorable to the non-movant and indulge every reasonable inference and resolve **any** doubt in favor of the non-movant (Id. at 228).

If the non-movant presents more than a scintilla of evidence on the challenged elements, it is entitled to a trial on the merits. *Ridgway vs. Ford Motor Company, 82 SW3d 26, 29 (Tex. App. – San Antonio, 2002) rev'd o.g. 135 SW3d 598 (Tex. 2004)*. A non-movant produces more than a scintilla when the evidence "rises to a level that would enable reasonable and fair minded people to differ in their conclusions." *Marsaglia vs. The University of Texas El Paso, 22 SW3d 1,4 (Tex. App. – El Paso, 1999, pet. Denied)*.

If the credibility of the affiant or deponent is likely to be a dispositive factor in the resolution of the case, then summary judgment is in appropriate. *Casso, M.D. vs. Brand, 776 SW2d 551, 558 (Tex. 1989)*.

## X.
## ARGUMENT & AUTHORITIES

### Law

The Corpus Christi Regional Transportation Authority "RTA" is a governmental body and the Texas Tort Claims Act applies. §101.101 of the Texas Civil Practice and Remedies Code states the following:

## §101.101 – Notice

(a) A governmental unit is entitled to receive notice of a claim against it under this chapter not later than six months after the day that the incident giving rise to the claim occurred. The notice must reasonably describe:

    (1) The damage or injury claimed;

    (2) The time and place of the incident; and

    (3) the incident.

(b) A city's charter and ordinance provisions requiring notice within a charter period permitted by law are ratified and approved.

(c) The notice requirements provided or ratified and approved by Subsections (a) and (b) do not apply if the governmental unit has actual notice that death has occurred, that the claimant has received some injury, or that the claimant's property has been damaged.

This notice provision is a statutory prerequisite and jurisdictional requirement in all suits against a governmental entity, §311.034 of the Texas Government Code.

The Supreme Court of Texas in _Texas Department of Criminal Justice vs. Simons 140 SW3d 338, 344 – 348 (Tex. 2004)_; stated "actual notice" to a governmental unit requires knowledge of… (2) the governmental unit's alleged fault (in) **producing** or **contributing** to the death, injury, or property damage emphasis added) p. 344. The Court also said that "actual notice" "includes subjective awareness of its fault," p. 347. **"We have long held that actual notice is a fact question when the evidence is disputed.** In many instances, however, actual notice can be determined as a matter of law. **There will be times when**

**subjective awareness must be proved, if at all, by circumstantial evidence,"** p. 348 (emphasis added).

"Subjective awareness is required because if a governmental entity is not aware of fault it does not have incentive "to gather information…" (Id. – 348).

"Subjective" means based on individual's perceptions, feelings or intentions. *City of Dallas vs. Carbajal 278 SW3d 802, 804 (Tex. App. – Dallas 2009), rev'd o.g. 324 SW3d 537 (Tex. 2010)*.

In *University of Texas Southwestern Medical Center at Dallas vs. Estate of Arancibia, 324 SW3d 54, 549 550 (Tex. 2010)* The Supreme Court said a governmental unit cannot disclaim subjective awareness by alleging its investigation found no breach of duty or of standard care.

"Fault as it pertains to actual notice, is not synonymous with liability, rather it implies responsibility for the injury claimed," (Id. 550).

"No court has held that fault must be exclusively the governmental unit's. Rather, the Plaintiff must present some evidence of the city's knowledge that it produced or **contributed** to the injury." *Ortiz Guevara vs. City of Houston, 2014 WL 161 837, p. 4 (Tex. App. – Houston (14th Dist.) 20104)*.

Mr. Brown's argument is that the RTA did an investigation and wrote a report that absolved them of any fault and blamed the other guy. The RTA and police did not talk to Mr. Brown because he went to the hospital.

Mr. Brown is not arguing the RTA "should have known' of their fault but rather they knew but did not want to admit it. The RTA did a "cover up" investigation and "white wash" report.

### The Circumstantial Evidence of "Subjective awareness of fault"

The circumstantial evidence is:

1.  their bus driver actually ran over Mr. Brown's left arm and thus "produced or contributed" to the accident. The bus was the "sole instrument of injury.";

2.  motor vehicle accidents usually are caused by a failure to keep a proper lookout or stop a vehicle. This bus driver obviously did not see Mr. Brown in time to avoid the accident but the RTA bus driving requirements listed below require him to look out for people running to catch the bus (TR – 153). How can the RTA ignore their own rules and exonerate their bus driver?;

3.  the Corpus Christi Police report notes the bus driver's side view mirror was photographed (TR – 47 and 95) and there are photographs of his clear view (TR 85-92). At least one policeman thought it important to know what the bus driver's view was. This is asking "Why didn't you see him?"

4.  the RTA produced their bus manual which had many bus driving rules which this bus driver has broken or ignored including, but not limited to:

    -   "Check your right mirror for passengers running to catch the bus" (TR – 153);

    -   "Check doors to make sure they are clear before closing and leaving" (TR – 152);

    -   "To prevent collisions give passengers with mobility problems, packages, or intoxicated passengers… more time and more distance!" (TR – 153);

- 12 -

- Balance the need for safety with the need to provide service (TR – 153);

- Pedestrian incidents are extremely serious (TR – 162); and

- Operators should be alert to awaiting passengers… (TR – 166). Surely the Supervisor and Director of Safety & Security knew those rules.;

These are exactly the type of rules meant to avoid this type of accident Mr. Brown had.

5. Two prior accidents by the bus driver:

*A prior incident report about the bus driver in issue dated September 28, 2010 Incident Report & Complaint: where complainant stated that when he alighted the bus the bus driver closed the door on his hand and when complainant asked the bus driver, "Why did you do that?" the bus driver said, "I don't care what I did." (page – RTA 32) (TR – 128);*

*A prior incident report about the bus driver in issue dated February 15, 2011 Incident Report: where the RTA bus driver in this case previously hit and shattered the mirror on a Fed Ex truck parked along the side of the road (page – RTA 50) (TR – 139);and*

6. A RTA Bus Audit stating the RTA has had too many preventable accidents (TR – 106 – 108) might be an incentive not to categorize Mr. Brown's accident as "Preventable," not to mention the cost of liability. Blame the other guy!

### The Prejudicial Argument on "Highly Intoxicated"

During the first hearing on the Plaintiff's Motion To Compel Discovery and Defendant's Plea To The Jurisdiction, no mention was made of Mike Pefanis' Affidavit stating Mr. Brown was "reportedly highly intoxicated at the time of the

- 13 -

incident." Mr. Brown's attorney did file a written objection to the Affidavit (TR – 113) as hearsay. At the second hearing it was mentioned and was highly prejudicial!

If this Court looks at the police reports, and the report of the bus driver, the RTA Supervisor and Mr. Pefanis' report of June 01, 2012, there is no mention Mr. Brown was intoxicated. Mr. Brown denied it in his Affidavit – but even if it were true the RTA bus rules require their bus drivers to give intoxicated passengers MORE TIME (TR – 153).

## Other Cases Cited By The RTA Distinguished

At the hearing, counsel for RTA cited several cases in their Plea to the Jurisdiction that can be distinguished from this case.

In *City of Dallas vs. Carbajal 324 SW3d 537 (Tex. 2010)* Plaintiff sued the City of Dallas when she drove into an excavation not properly blocked or marked. Clearly, the incident did not show any city official present at the time of the accident nor does it show who failed to erect the barricades. The City had no notice they were at fault. The RTA also cited two cases from this 13th Court.

In *Muniz vs. Cameron County 2012 WL 165632, May, 2012* this Court affirmed the granting of a Plea to the Jurisdiction. In that case a deputy sheriff was in pursuit of a suspect in a black pickup truck that crashed into a vehicle killing

- 14 -

Ms. Muniz. In his criminal case, the driver of the pickup truck "took full responsibility" for the collision and only later changed his story.

In *Texas Department of State Health Services vs. Gonzalez 2014 WL 7205332, December, 2014*, Laura Gonzalez was involved in a "four-car pile-up" on Highway 83 with the Texas Department of Health Services' vehicle being the third car from Ms. Gonzalez's vehicle.

In our case there were only two participants the bus driver and the pedestrian. The driver ran over his arm and participated in the accident directly.

## Purpose Of Notice Requirement Satisfied

The purpose of §101.101 of Texas Tort Claims Act is to enable governmental units to gather information necessary to guard against unfounded claims, settle claims, and prepare for trial.

That purpose seems to have been met here. This is not an "unfounded claim." Certainly, the RTA was immediately on the scene of the accident because they take "pedestrian incidents... extremely serious and [they] must be handled with the highest possible degree of sensitivity and professionalism," (TR – 162). They knew the details and common sense asks why didn't the bus driver keep a proper lookout?

Mr. Brown argues this standard of "actual subjective awareness of fault" promotes the fraudulent **denial** of fault by governmental officials or allows them to

assert "plausible deniability" and should be replaced by a "reasonable notice" standard. The RTA was criticized for too many preventable accidents (TR – 106 – 108). If the RTA was a private company, they never would get away with arguing they did not actually know they were at fault.

## XI.
## CONCLUSION

Because of all the circumstantial evidence including (1) the bus driver running over Mr. Brown's arm; (2) violations of bus operating rules; (3) prior accidents of the bus driver; and (4) a 2012 Audit that said the RTA had too many preventable accidents, Mr. Brown has raised a fact issue on whether the RTA actually knew of its fault, in whole or part, and Mr. Brown should be allowed to cross-examine the RTA on its denial of "subjective awareness of fault." When the credibility of witnesses is a dispositive factor a summary judgment is inappropriate, *Casso, M.D. vs. Brand 776 SW2d 551, 558 (Tex. 1989)*.

## XII.
## PRAYER

Mr. Brown requests the Court to reverse the Plea to the Jurisdiction.

Respectfully Submitted,

**LAW OFFICE OF KEN HANNAM**
Park Green Atrium
4444 Corona Drive, Suite 119
Tel: (361) 853-8833; Fax: (361) 853-8946

By: _Ken Hannam_
     **Ken Hannam**
     State Bar No. 08925400

**ATTORNEY FOR APPELLANT**

## XIII.
## <u>CERTIFICATE OF SERVICE</u>

I do hereby certify that a true and correct copy of the above and foregoing

Appellant's Brief was this day e-mailed and mailed by Certified Mail, Return

Receipt Requested to the Appellee's Attorney, Ken Fields on this the ___8th___ day

of June, 2015.

*Via E-Mail:  kfields@mcv-law.com*
*and Via CMRRR #:*_____
Hon. Ken Fields
McKibben & Villarreal
555 North Carancahua, Suite 1100
Corpus Christi, Texas 78401

_Ken Hannam_
**Ken Hannam**

## CERTIFICATE OF COMPLIANCE

Pursuant to the Texas Rule of Appellate Procedure 9.4 (i) (3), I hereby certify that this brief contains **4,194** words (counting all parts of the document). This is a computer-generated document created in Microsoft Word, using 14-point font. In making this certificate of compliance, I am relying on the word count provided by the software used to prepare the document.

_____
**Ken Hannam**

# APPENDIX

**Order Granting Plea To The Jurisdiction**

**Corpus Christi Police Accident Report**

**RTA – Bus Driver Report**

**RTA – Supervisor Report**

**Photographs of side of Bus and Driver's
side view mirror**

**RTA rules on checking right mirror for passengers
running to catch the bus & so on**

**Donnie Brown's Affidavit**

**Caller.com – Audit – RTA should work on
reducing accidents**

CAUSE NO. 2014CCV-60671-1

| | | |
|---|---|---|
| DONNIE DOYLE BROWN | § | IN THE COUNTY COURT |
| (D.O.B.: 10/06/1956) | § | |
| | § | |
| V. | § | AT LAW NO. ONE |
| | § | |
| CORPUS CHRISTI REGIONAL | § | |
| TRANSPORTATION AUTHORITY, | § | |
| ~~MV CONTRACT TRANSPORTATION, INC.,~~ | § | |
| ~~AND MV TRANSPORTATION, INC., D/B/A~~ | § | |
| THE B | § | NUECES COUNTY, TEXAS |

## ORDER GRANTING PLEA TO THE JURISDICTION

~~On this day the Court considered the Plea to the Jurisdiction filed by Corpus Christi Regional~~ Transportation Authority. The Court, after considering the Plea to the Jurisdiction; the evidence properly before the Court; the Response filed by the Plaintiff; hereby finds that Defendant, Corpus Christi Regional Transportation Authority's Plea to the Jurisdiction should be and is, therefore, GRANTED.

IT IS ORDERED, ADJUDGED AND DECREED, that Defendant's Plea to the Jurisdiction is hereby GRANTED and this cause is hereby DISMISSED in its entirety. This Order disposes of all parties and claims, and is an appealable Order.

SIGNED on this the ___ day of ___ March ___, 2015.

_____
JUDGE PRESIDING

*copies to:*
- Mr. Ken Hannam, LAW OFFICE OF KEN HANNAM, Park Green Atrium, 4444 Corona Drive, Suite 119, Corpus Christi, Texas 78411
- Mr. Thomas A. Silver, DUNN, WEATHERED, COFFEY, RIVERA & KASPERITIS, P.C., 611 S. Upper Broadway, Corpus Christi, Texas 78401

169

Thu, 17 Apr 2014

STATE OF TEXAS     §

This is to certify that I, Debra Vermillion, am employed by the Texas Department of Transportation (Department); that I am the Custodian of Motor Vehicle Crash Records for such Department; that the attached is a true and correct copy of the peace officer's report filed with the Department referred to in the attached request with the crash date of __Fri, 04 May 2012__ , which occurred in __Nueces__ County; that the investigations of motor vehicle crashes by peace officers are authorized by law; that this Texas Peace Officer's Crash Report is required by law to be completed and filed with this Department; that this report sets forth matters observed pursuant to duty imposed by law as to which matters there was a duty to report, or factual findings resulting from an investigation made pursuant to authority granted by law.

Debra Vermillion, Director
Crash Data and Analysis Section
P. O. Box 149349
Austin, Texas 78714
(512) 486-5780



OUR GOALS
MAINTAIN A SAFE SYSTEM ▪ ADDRESS CONGESTION ▪ CONNECT TEXAS COMMUNITIES ▪ BEST IN CLASS STATE AGENCY
*An Equal Opportunity Employer*

93

Law Enforcement and TxDOT Use ONLY

☐ FATAL ☒ CMV ☐ SCHOOL BUS ☐ RAILROAD ☐ MAB ☐ SUPPLEMENT ☐ ACTIVE SCHOOL ZONE

| Total Num. Units | 2 | Total Num. Prsns. | 1 1 | TxDOT Crash ID |
|---|---|---|---|---|

**Texas Peace Officer's Crash Report (Form CR-3 1/1/2010)**

Mail to: Texas Department of Transportation, Crash Records, P.O. Box 149349, Austin, TX 78714. Questions? Call (512) 486-5780
Refer to Attached Code Sheet for Numbered Fields
*= These fields are required on all additional sheets submitted for this crash (ex.: additional vehicles, occupants, injured etc.).

Page 1 of 3

**IDENTIFICATION AND LOCATION**

* Crash Date (MM/DD/YYYY): 05/04/2012  * Crash Time (24HRMM): 1436  Case ID: C1203397  Local Use:

* County Name: **NUECES**   * City Name: **CORPUS CHRISTI**   ☐ Outside City Limit

In your opinion, did this crash result in at least $1,000 damage to any one person's property? ☐ Yes ☒ No
Latitude (decimal degrees): |__.____|  Longitude (decimal degrees): _|__.____

**ROAD ON WHICH CRASH OCCURED**

| *1 Rdwy. Sys. | LR | * Hwy. Num. | | 2 Rdwy. Part | 1 | Block Num. | 3300 | 3 Street Prefix | S | * Street Name | ALAMEDA | 4 Street Suffix | ST |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

☐ Crash Occurred on a Private Drive or Road/Private Property/Parking Lot   ☐ Toll Road/ Toll Lane   Speed Limit: 35   Const. Zone ☐ Yes ☒ No   Workers Present ☐ Yes ☒ No   Street Desc

**INTERSECTING ROAD, OR IF CRASH NOT AT INTERSECTION, NEAREST INTERSECTING ROAD OR REFERENCE MARKER**

At Int. ☐ Yes ☒ No | 1 Rdwy. Sys. LR | Hwy. Num. | 2 Rdwy. Part 1 | Block Num. 400 | 3 Street Prefix | Street Name TEXAN | 4 Street Suffix TRL

Distance from Int. or Ref. Marker: 50  ☒ FT ☐ MI   3 Dir. from Int. or Ref. Marker: S   Reference Marker   Street Desc.   RRX Num.

| Unit Num. | 1 | 5 Unit Desc. | 1 | ☐ Parked Vehicle | ☐ Hit and Run | LP State | TX | LP Num. | 858767 | VIN | 1Z9B5DTS93W216053 |
|---|---|---|---|---|---|---|---|---|---|---|---|

| Veh. Year | 2003 | 6 Veh. Color | BLU | Veh. Make | OPTIMA | Veh. Model | LB37 | 7 Body Style | BU | ☐ Pol., Fire, EMS on Emergency (Explain in) Narrative if checked |
|---|---|---|---|---|---|---|---|---|---|---|

| 8 DL/ID Type | 2 | DL/ID State | TX | DL/ID Num. | 07007064 | 9 DL Class | B | 10 CDL End. | P | 11 DL Rest. | 96 | DOB (MM/DD/YYYY) | 10/07/1951 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

Address (Street, City, State, ZIP): 5726 KIMBROUGH DR, CORPUS CHRISTI, TX 78412

| Person Num. | 12 Prsn. Type | 13 Seat Position | Name: Last, First, Middle — Enter Driver Or Primary Person for this Unit on first line | 14 Injury Severity | Age | 16 Ethnicity | 16 Sex | 17 Eject | 18 Restr. | 19 Airbag | 20 Helmet | 21 Sol. | 22 Alc Spec | Alc Result | 23 Drug Spec | 24 Drug Result | 26 Drug Category |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 1 | 1 | FRANZONE, ANGELO JOSEPH JR | N | 60 | 98 | 1 | 1 | 1 | 1 | 97 | N | 96 | | 96 | 97 | 97 |
| 2 | 2 | 14 | ALANIZ, ESMERALDA | N | 39 | H | 2 | 97 | 97 | 97 | 97 | N | | | | | |
| 3 | 2 | 14 | CANTERA, LUZ | N | 70 | H | 1 | 97 | 97 | 97 | 97 | N | | | | | |
| 4 | 2 | 14 | DIAZ, NOE JR | N | 41 | H | 1 | 97 | 97 | 97 | 97 | N | | | | | |

Not Applicable - Alcohol and Drug Results are only reported for Driver/Primary Person for each unit.

☒ Owner ☐ Lessee  Owner/Lessee name & Address: **CORPUS CHRISTI REGIONAL TRANSPORTATION A 5658 BEAR LN, CORPUS CHRISTI, TX 78405**

| Proof of Fin. Resp. | ☒ Yes ☐ No ☐ Expired ☐ Exempt | 26 Fin. Resp. Type | 7 | Fin. Resp. Name | CORPUS CHRISTI REGIONAL | Fin. Resp. Num. | 8811 |
|---|---|---|---|---|---|---|---|

| Fin. Resp. Phone Num. | 800-537-6655 | 27 Vehicle Damage Rating 1 | R B Q 0 | 27 Vehicle Damage Rating 2 | | Vehicle Inventoried | ☐ Yes ☒ No |
|---|---|---|---|---|---|---|---|

Towed By: DRIVER   Towed To: DRIVEN AWAY

| Unit Num. | 2 | 5 Unit Desc. | 4 | ☐ Parked Vehicle | ☐ Hit and Run | LP State | LP Num. | VIN |
|---|---|---|---|---|---|---|---|---|

| Veh. Year | | 6 Veh. Color | | Veh. Make | | Veh. Model | | 7 Body Style | | ☐ Pol., Fire, EMS on Emergency (Explain in) Narrative if checked |
|---|---|---|---|---|---|---|---|---|---|---|

| 8 DL/ID Type | 4 | DL/ID State | TX | DL/ID Num. | 01543317 | 9 DL Class | | 10 CDL End. | | 11 DL Rest. | | DOB (MM/DD/YYYY) | 10/06/1956 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

Address (Street, City, State, ZIP): 210 S ALAMEDA ST, CORPUS CHRISTI, TX 78401

| Person Num. | 12 Prsn. Type | 13 Seat Position | Name: Last, First, Middle — Enter Driver Or Primary Person for this Unit on first line | 14 Injury Severity | Age | 16 Ethnicity | 18 Sex | 17 Eject | 18 Restr. | 19 Airbag | 20 Helmet | 21 Sol. | 22 Alc Spec | Alc Result | 23 Drug Spec | 24 Drug Result | 26 Drug Category |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 4 | 16 | BROWN, DONNIE DOYLE | A | 55 | W | 1 | 97 | 97 | 97 | 97 | N | 96 | | 96 | 97 | 97 |

Not Applicable - Alcohol and Drug Results are only reported for Driver/Primary Person for each unit.

☐ Owner ☐ Lessee  Owner/Lessee name & Address:

| Proof of Fin. Resp. | ☐ Yes ☐ No ☐ Expired ☐ Exempt | 26 Fin. Resp. Type | | Fin. Resp. Name | | Fin. Resp. Num. | |
|---|---|---|---|---|---|---|---|

| Fin. Resp. Phone Num. | | 27 Vehicle Damage Rating 1 | | 27 Vehicle Damage Rating 2 | | Vehicle Inventoried | ☐ Yes ☐ No |
|---|---|---|---|---|---|---|---|

Towed By:   Towed To:

Copy from Custodial File

94

**DISPOSITION OF INJURED/KILLED**

| Unit Num. | Prsn. Num. | Taken To | Taken By | Date of Death (MM/DD/YYYY) | Time of Death (24HRMM) |
|---|---|---|---|---|---|
| 2 | 1 | SPOHN HOSPITAL MEMORIAL | MEDIC 2 | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

**CHARGES**

| Unit Num. | Prsn. Num. | Charge | Citation/Reference Num. |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

**DAMAGE**

| Damaged Property Other Than Vehicles | Owner's Name | Owner's Address |
|---|---|---|
| | | |

**CMV**

| Unit Num. 1 | ☐ 10,001+ LBS. | ☐ TRANSPORTING HAZARDOUS MATERIAL | ☒ 9+ CAPACITY | 28 Veh. Oper. 1 | 29 Carrier ID Type 96 | Carrier ID Num. |
|---|---|---|---|---|---|---|

Carrier's Corp. Name **REGIONAL TRANSPORTATION**    Carrier's Primary Addr. **5658 BEAR LN, CORPUS CHRISTI, TX 78406**

| 30 Rdwy. Access 3 | 31 Veh. Type 4 | ☐ RGVW ☒ GVWR 3 3 0 0 0 | HazMat Released ☐ Yes ☐ No | 32 HazMat Class Num. | 32 HazMat ID Num. | 32 HazMat Class Num. | 32 HazMat ID Num. |
|---|---|---|---|---|---|---|---|

| 33 Cargo Body Style | Trailer 1 Unit Num. | ☐ RGVW ☐ GVWR | 34 Trlr. Type | Trailer 2 Unit Num. | ☐ RGVW ☐ GVWR | 34 Trlr. Type |
|---|---|---|---|---|---|---|

| Sequence Of Events | 35 Seq. 1 12 | 35 Seq. 2 | 35 Seq. 3 | 35 Seq. 4 | Total Num. Axles 2 | Total Num. Tires 6 |
|---|---|---|---|---|---|---|

**FACTORS & CONDITIONS**

| | 36 Contributing factors (Investigator's Opinion) | | 37 Vehicle Defects (Investigator's Opinion) | | Environmental and Roadway Conditions | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Unit Num. | Contributing | May Have Contrib. | Contributing | May Have Contrib. | 38 Weather Cond. | 39 Light Cond. | 40 Entering Roads | 41 Roadway Type | 42 Roadway Alignment | 43 Surface Condition | 44 Traffic Control |
| 1 | | | | | | | | | | | |
| 2 | 59 | | | | 2 | 1 | 97 | 1 | 1 | 1 | 5 |

**NARRATIVE AND DIAGRAM**

Investigator's Narrative Opinion of What Happened (Attach Additional Sheets If Necessary)

Unit# 1 was traveling northwest in the 3300 block of S Alameda St and approaching the Texan Trail intersection. Driver of Unit# 1 had stopped for a regional Transportation Authority Bus Stop to load passengers. There were 2 individuals at the stop, Witness and Pedestrian. When the bus stopped, witness got on and the Pedestrian had fallen asleep. As the RTA bus began to move Pedestrian woke up and attempted to get on. Witness then jumped off the bus in an attempt to help the Pedestrian on, but the bus began to move again. Pedestrian attempted to grab hold of the bus, lost his balance due to the curb, fell and was dragged for approximately 10 feet. When he let go of the bus he fell to the ground and the right rear tire of the bus ran over the Pedestrians left arm.

WITNESS NAMES:
PRUGEL, KARL
210 S ALAMEDA ST, CORPUS CHRISTI, TX 78401
(361) 857-7236

Indicate North

Field Diagram - Not to Scale

3200 S Alameda St
400 Texan Trail
500 Texan Trail
3300 S Alameda St

**INVESTIGATOR**

| Time Notified (24HRMM) 1 4 3 6 | How Notified DISPATCHED | Time Arrived (24HRMM) 1 4 4 9 | Report Date (MM/DD/YYYY) 0 5 / 0 4 / 2 0 1 2 |
|---|---|---|---|

| Invest. Comp. ☒ Yes ☐ No | Investigator Name (Printed) CONNER, DAVID | | ID Num. 1777 |
|---|---|---|---|

| ORI Num. T X 1 7 8 0 2 0 0 | ★ Agency CORPUS CHRISTI POLICE DEPARTMENT | District/ Area |
|---|---|---|

Copy from Custodial File

95

| ★Crash Date (MM/DD/YYYY) | ★Crash Time (24HRMM) | ★County Name |
|---|---|---|
| 05/04/2012 | 1436 | NUECES |

| ★City Name | ★1 Rdwy. Sys. | ★Hwy. Num. |
|---|---|---|
| CORPUS CHRISTI | LR | |

★Street Name **ALAMEDA**

ORI Num. **T X 1 7 8 0 2 0 0**  ★Agency **CORPUS CHRISTI POLICE DEPARTMENT**

District/Area

| Unit. Num. | Person Num. | 12: Prsn. Type | 13. Seat Position | Name: Last, First, Middle | 14: Injury Severity | Age | 15: Ethnicity | 16. Sex | 17: Eject. | 18: Restr. | 19: Airbag | 20. Helmet | 21: Sol. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 5 | 2 | 14 | JONES, KIMMIE | N | 42 | W | 2 | 97 | 97 | 97 | 97 | N |
| 1 | 6 | 2 | 14 | DIAZ, BENITO | N | 45 | H | 1 | 97 | 97 | 97 | 97 | N |
| 1 | 7 | 2 | 14 | JIMENEZ, ALICIA | N | 46 | W | 2 | 97 | 97 | 97 | 97 | N |
| 1 | 8 | 2 | 14 | BLOUNT, THERESA | N | 60 | W | 2 | 97 | 97 | 97 | 97 | N |
| 1 | 9 | 2 | 14 | GAZAWAY, ADRIAN | N | 16 | W | 1 | 97 | 97 | 97 | 97 | N |
| 1 | 10 | 2 | 14 | SAUCEDA, JULIO | N | 52 | H | 1 | 97 | 97 | 97 | 97 | N |

ADDITIONAL PERSONS

Copy from Custodial File

96

| Law Enforcement and TxDOT Use ONLY. Form CR-3 01/01/2010 | Case ID **C1203397** | | TxDOT Crash ID | | Supplement Page **1** |
|---|---|---|---|---|---|

| ★Crash Date (MM/DD/YYYY) 0 5 / 0 4 / 2 0 1 2 | ★Crash Time (24HRMM) 1 4 3 6 | ★County Name **NUECES** |
|---|---|---|

| ★City Name **CORPUS CHRISTI** | | ★1 Rdwy. Sys. **LR** | ★Hwy. Num. |
|---|---|---|---|

★Street Name **ALAMEDA**

| ORI Num. T X 1 7 8 0 2 0 0 | ★Agency **CORPUS CHRISTI POLICE DEPARTMENT** | District/ Area |
|---|---|---|

Supplement type:   PHOTO CALL/CSI

CCPD Forensic Services Division
Supplement Report

Requested By: D. CONNER #1053

Latent Case Number: N/A

Lab Case Number: N/A

Narrative:
ON 05/04/12, I RESPONDED TO AN ASSIST AT 3300 BLOCK OF S. ALAMEDA ST. IN REFERENCE TO A MAJOR TRAFFIC ACCIDENT INVOLVING A PEDESTRIAN. I ARRIVED AT APPROXIMATELY 3:26pm AND WAS DIRECTED TO A REGIONAL TRANSIT AUTHORITY BUS STOP IN FRONT OF 3302 S. ALAMEDA ST. ALONG THE NORTHBOUND LANE OF S. ALAMEDA ST. AND SOUTH OF TEXAN TRAIL. THERE WAS A REGIONAL TRANSIT AUTHORITY BUS #230 LIC# TX:858767 STOPPED CURBSIDE NORTH OF THE BUS STOP. THE BUS HAD BLOOD-LIKE MATERIAL ON THE RIGHT REAR WHEEL (TWO O`CLOCK POSITION). SOUTH OF THE BUS POSITION THERE WAS BLOOD-LIKE MATERIAL, BROKEN GLASS AND A ROUND RING (BEZEL) CURBSIDE ALONG THE NORTHBOUND LANE. ON THE GRASS THERE WAS A STAINED, DAMAGED WATCH. THE CURB FACE SOUTH OF THE BLOOD-LIKE MATERIAL HAD SCRAPES AND A BROWNISH STREAK EXTENDING TO A POINT PROXIMATE THE NORTH END OF THE BUS STOP KIOSK. A GOUGE-LIKE MARK WAS ON THE CURB AT THAT POINT.

I PHOTOGRAPHED THE SCENE, INCLUDING THE VIEW FROM THE DRIVER`S SEAT OF THE RIGHT SIDE MIRROR.

I CLEARED FOR FOLLOW-UP AT CHRISTUS SPOHN MEMORIAL HOSPITAL (2606 HOSPITAL BLVD). I MADE CONTACT WITH THE HOSPITAL STAFF WHO WHERE ENROUTE TO SURGERY WITH A MALE IDENTIFIED TO ME AS DONNIE BROWN (dob: 10/06/56). AT APPROXIMATELY 4:20pm PARTIAL PHOTOGRAPHS WERE OBTAINED OF MR. BROWN REFLECTING INJURIES TO THE LEFT SIDE OF THE HEAD, LEFT HAND AND A BANDAGED LEFT ARM.

THE IMAGES WERE DOWNLOADED INTO THE DIGITAL IMAGE MANAGEMENT SYSTEM (DIMS).

Evidence Collected: NONE

Evidence Disposition:
Submitted to Property:
Secured in Evidence Vault:
Destroyed:
Released to:
Authority of:

Latent Lifted - Yes/No: NO
Number of Cards Submitted:
Examiner`s Initials:

Photos Taken - Yes/No: YES
Type: 35mm/Color/B&W/Digital/Serial#: DIGITAL/DIMS DOWNLOAD

| Investigator Name(Printed) **PREBUL, JOHN** | ID Num. **2276** | Agency **CORPUS CHRISTI POLICE DEPARTMENT** |
|---|---|---|

Copy from Custodial File

97

| ★Crash Date (MM/DD/YYYY) | 0 5 / 0 4 / 2 0 1 2 | ★Crash Time (24HRMM) | 1 4 3 6 | ★County Name | **NUECES** |

| ★City Name | **CORPUS CHRISTI** | | ★1 Rdwy. Sys. | **LR** | ★Hwy. Num. |

| ★Street Name | **ALAMEDA** |

| ORI Num. | **T X 1 7 8 0 2 0 0** | ★Agency | **CORPUS CHRISTI POLICE DEPARTMENT** | District/Area |

**Supplement type:** PHOTO CALL/CSI

| Investigator Name(Printed) | **PREBUL, JOHN** | ID Num. | **2276** | Agency | **CORPUS CHRISTI POLICE DEPARTMENT** |

Copy from Custodial File



# REGIONAL TRANSPORTATION AUTHORITY
## EMPLOYEE REPORT OF
## ACCIDENT/INCIDENT/INJURY

Office Use Only
Report No.
1205-08

Note: Print legibly in ink or type all applicable information on both sides prior to submitting.

Employee's Name: Angelo FRANCONE   Driver Lic #: 07007064  Exp. Date 10-7-15 Sex: ☑M ☐F
Empl. I.D. # 10635   D.O.B. 10/2/51  Length of Service 8yr  Position: Bus Driver

Date of Accident/Incident:   Vehicle # 230  Location of incident/Accident on Alameda at Texan Trail
Month 05  Date 04  Year 2012  Time 2:33 AM/☑PM  Day of Week Fri.   Route# 5

☐ Vehicle Accident   ☐ Passenger Accident   ☐ Employee Personal Accident/Injury   10 No. Passengers
☑ Vehicle Incident   ☐ Passenger Incident   ☐ Disturbance ☐ Illness ☐ Other   6 No. Courtesy Cards

Complete this side for all accidents and incidents (For vehicle and/or passenger accidents - also complete reverse side *)
Describe accident/Incident completely (if needed, use additional paper):

Doing At #5 Bus 230 going inbound - Bus came to A stop on Alameda & Texan Trail. There were Two male customer At the stop - One customer came Aboard and the other customer was Asleep at the Bus stop - As the bus driven About 11 ft. The customer I pick up At Alameda + Texan Trail Wanting To get off the Bus, And Seeing There was Red Light I Let him off And then proceeded to come to the Red light - it was About 35 ft. from the Bus stop to the Red Light At Alameda And Texan Trail - And before I got to the Light Customer that was Asleep At the bus stop At Alameda & Texas Trail Run Behind ✓ My Bus And The Light on the curve And fell with his Left Arm under the Rire flat

Did incident occur on company vehicle? ☐ Yes ☐ No   If not, give distance from company vehicle _____ Feet
Was person a passenger prior to incident? ☐ Yes ☐ No   Was company vehicle involved? ☐ Yes ☐ No
Did you request and/or receive medical attention? ☐ Yes ☐ No   Transported to Medical Attention? ☐ Yes ☐ No

5-4-12
Date of Report   Employee's Signature

☑ RTA ☐ Contract ☐ Other
Employee Status:

Signature of Supervisor Receiving Report

Logged by (Office Use Only)

RTA000001

35



*Complete this side for all vehicle and/or passenger accidents. Read and Complete All Areas that apply.

**Company Vehicle:** How far were you from point of collision or passenger accident when other vehicle or pedestrian was first seen? _____6_____ Feet.

Estimated Speed when you First Noticed Hazard _____ M.P.H. How far from collision/passenger accident when you applied your brakes? _____ Feet

Estimated Speed of your Vehicle at Time of Collision/Passenger Accident _____ M.P.H. How far did your vehicle move after collision? _____ Feet

Were Police notified? ❏ Yes ❏ No  Were Police called to scene? ❏ Yes ❏ No  Police Officer (s) _____ Police Car# _____

Was Ambulance Requested? ❏ Yes ❏ No  By Whom? _____

Transported to Hospital? ❏ Yes ❏ No  Hospital? _____

**Injured:**

| Names | Addresses | Phone #. | Apparent Injuries | Passenger | Pedestrians | Other Veh Occupants | App Age |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

Did you notice any equipment defects while doing your pre-trip inspection? (Steps, Floors, doors, seats, Brakes, Radio, Body Damage, Etc) ❏ Yes ❏ No

Describe Defects _____

Did you notify someone of defects? ❏ Yes ❏ No  Who did you notify? _____ How? _____ When? _____

**Passenger Accident:**

Was Person: ❏ Boarding ❏ Alighting ❏ On Board ❏ At Front Door ❏ At Rear Door ❏ On Lift ❏ Struck by Doors

Motion of RTA Vehicle: ❏ Standing ❏ Starting ❏ Stopping ❏ Running ( ❏ Straight ❏ on Curve) ❏ Going _____ MPH

If A Fall, Location: ❏ Front Steps ❏ Front Platform ❏ Aisle ❏ Center Steps ❏ Center Platform.

Did Person come into contact with RTA Vehicle when falling? ❏ Yes ❏ No.  Distance from Vehicle if outside _____ Ft.

Condition of: Front Steps _____ Center Steps _____ . Distance of involved door from curb? _____ Ft./Inch.

**Vehicle Accident:** ❏ Fixed Object ❏ Other Veh. ❏ Parked Vehicle ❏ Sideswipe ❏ Pedestrian ❏ At Bus Stop

❏ Head-on ❏ Turning Left ❏ Backing ❏ Turning Right ❏ Other: _____

RTA Veh. Direction: ❏ North ❏ South ❏ East ❏ West

Traffic Control: ❏ Stop Sign ❏ Signal ❏ None ❏ Police ❏ Other: _____

General Conditions: ❏ Clear ❏ Rain ❏ Fog ❏ Dark ❏ Daylight ❏ Down/Dusk

❏ Dark w/ Street Lights ❏ Other _____

Street Surface ❏ Dry ❏ Wet ❏ Ice ❏ Muddy ❏ Oily ❏ Other

Vehicle Lights (RTA Veh ❏ On ❏ Off) (Other Veh ❏ On ❏ Off)

Did you sound your horn? ❏ Yes ❏ No.  Did Police issue citations at scene? ❏ Yes ❏ No  To Whom? _____

Damage to RTA Vehicle/Property: _____

Apparent damage to other vehicle/property: _____

Driver: _____ Address: _____ Phone No. _____ Driv. Lic# _____ State _____

Exp Date _____ Veh. Lic# _____ State _____ # Persons in Veh. _____ is other Veh insured? Yes _____ No _____

Ins. Co _____ Pol# _____ Exp: _____

Name of other Veh. Owner (if different from above): _____

Est. Speed of other Veh. When first Noticed: _____ M.P.H. At time of Collision: M.P.H. _____

Distance Traveled after Collision? _____ Feet

*Complete diagram below for ALL Vehicle and passenger accidents

❏▷ RTA Veh  ● Pedestrian

▨▷ Other Veh.  ▨ Fixed Object

Draw an arrow pointing north in this circle

At Alameda Bus Stop

Show Traffic Control Devices And Landmarks

Label Each Street

NOTE any damage on bus body

LEFT SIDE

RIGHT SIDE

REAR END

FRONT END

Form No. 1 6/89 - Rev. 10/97 Backside

RTA000002



# REGIONAL TRANSPORTATION AUTHORITY
## ACCIDENT/INCIDENT/INJURY

Office use Only
Report No.                    1

[Use This Sheet for **Additional** Information]

Name of Employee: Angelo Franzone Date of (incident)/Accident 5-4.12 Employee #:10635

on his stomach — Went to see the
accident — I went to the phone
to call dispatch what happen to call -911-

Form No J 10/97

RTA000003
37



# SUPERVISOR'S INVESTIGATION REPORT OF ACCIDENT/INCIDENT/INJURY

Office Use Only

Report No

Note: Print legibly in ink or type all applicable information on both sides prior to submitting.

Name of Employee Involved: ANGELO FRANZONE Driver Lic #: 07007064 Employee #: 10635
Date/Day/Time of occurrence: 5/4/12 / FRIDAY / 2:33 AM/PM RTA Veh. # 230 Route# 5
Location of Accident/Incident: ALAMEDA AT TEXAN TRAIL
Date/Time Occurrence was first Reported: 5/4/12 / 2:33 AM/PM First Reported To: RTA DISPATCHER

☐ Vehicle Acc/Inc. ☐ Passenger Accident ☐ Employee Personal Accident/Injury ☐ Arrest Made by P.D. (Constable)
☐ Other (misc.) ☐ Passenger Incident ☐ Employee Illness ☐ Police Report Filed - # _____

Was employee asked if He/She needed medical attention? ☒ Yes ☐ No. If no, Give Reason 9 PASSENGERS ON BUS

Was Employee sent to authorized clinic/hospital for medical examination or treatment? ☐ Yes ☒ No.
Was employee sent to clinic for drug and alcohol screening ☒ Yes ☐ No. Reason: _____

Your Signature: Chuck Rogers , 2nd Spvr. Signature: _____
Was Employee performing regular work? ☒ Yes ☐ No Witness(es) to accident: 9 PASSENGERS
Apparent nature of employee's injury: N/A
Had employee been instructed on proper job procedures (including possible hazards)? ☒ Yes ☐ No.

Complete this side for all accidents and incidents. (For vehicle and/or passenger accidents - also complete reverse side*)

Describe accident/Incident completely (if needed, use additional paper):
ARRIVED AT THE SCENE AT 2:53 PM, AND FOUND SEVERAL POLICE ON THE SCENE. THE DRIVER WAS AT THE DOOR OF THE BUS AND ALL PASSENGERS WERE STILL ON THE BUS. M. PARING WAS GETTING INFORMATION FROM PASSENGERS. I TOOK SEVERAL PICTURES OF THE BUS AND STOP AREA I HAD PREVIOUSLY CALLED THE OPERATOR TO HAVE HIM TAG THE VIDEO AND PASS OUT COURTESY CARDS. ALSO AN INDIVIDULE HAD ALREADY BEEN TRANSPORTED TO THE E.R. ROOM OF MEMORIAL HOSPITAL. WE COULD NOT GET THE NAME OF THE INDIVIDULE INVOLVED AT THE TIME.
WHEN SPEAKING TO OPERATOR ANGELO FRANZONE AT THE SCENE, HE BEGAN TELLING ME WHAT HAPPENED. HE STATED THAT THERE WAS TWO MEN AT THE STOP. ONE BOARDED THE BUS, WHILE THE OTHER WAS APPARENTLY SLEEPING AT THE STOP. ANGELO STATED THAT AS HE BEGAN TO PULL AWAY FROM

Photos Taken: ☐ Yes ☐ No

Charles Rogers 5/4/12 / 6:15 AM/PM
Supervisor Name (Please Print)    Date/Time Report Completed    Supervisor Signature

Logged by (Office Use Only)

Form No 2 6/89 - Rev 10/97

RTA000004

38

Operator was running ☑ On Time ☐ Behind Schedule.   Distance of involved door from curb _____ / _16_" Ft./Inch
Was Ambulance requested to scene? ☑ Yes ☐ No   If Yes, by whom? DISPATCHER
Was medical treatment given at scene? ☐ Yes ☐ No   Describe treatment: UNKNOWN
Was person transported to hospital? ☒ Yes ☐ No   If yes, where? Spohn Memorial

| Names of Persons Claiming Injury | Address (include: City, State and Zip Code) | Phone # (Home/Work) | Nature of Injury | Other Veh. | M/F | AGE | Pass ✔ | PED | Treated At Scene? |
|---|---|---|---|---|---|---|---|---|---|
| | | ( ) / | | | | | | | Y N |
| | | ( ) / | | | | | | | Y N |
| | N/A | ( ) / | | | | | | | Y N |
| | | ( ) / | | | | | | | Y N |
| | | ( ) / | | | | | | | Y N |
| | | ( ) / | | | | | | | Y N |

| Names of Witnesses/ Observers to incident | Address (include: City, State and Zip Code) | Phone # (Home/Work) | Pass ✔ | Age | M/F |
|---|---|---|---|---|---|
| KIM JONES | CC TX 78404 | 361 425/4979 | ✓ | | F |
| LUCIA JIMENEZ | 78408 | 361 290/5697 | ✓ | | F |
| Theresa Blount | 5901 WEBBER APT. E-10 78413 | 361 461/5490 | ✓ | | F |
| ESMERALDA ALANIZ | 2007 GARDENIA | 361 462/2437 | ✓ | | |

How many vehicles involved including RTA: 1   Were Police notified? ☑ Yes ☐ No   By whom? DISPATCHER
When did Police arrive? UNKNOWN AM/PM   Officers Name/Badge#: _____   Car#: _____
Other vehicle driver's name: _____   Address: N/A   Phone#: _____
Drive. Lic#: N/A   State: _____   Exp Date: N/A   D.O.B.: _____   #of Pass in Vehicle: 9
Vehicle Make: N/A   Model: N/A   Year: N/A   Lic.Plate# N/A   St: N/A   Reg. Valid? ☐ Yes ☐ No
Insurance Co. + Policy#: N/A   Policy Expires: _____   Current Inspection Valid? ☐ Yes ☐ No
Damage to other veh: N/A

*Use additional Paper to report on more than one vehicle.

Damage to RTA Vehicle: NON
Did Police Issue citation(s)? ☐ Yes ☒ No   To whom & for what? _____
Where there skid marks from RTA Vehicle? ☐ Yes N/A Feet ☐ No   Other veh? ☐ Yes ___ Feet ☐ No
*Complete diagram below for ALL Vehicle and passenger accidents. Use additional paper if needed. Make sure to include street names and direction of vehicles.

▷ RTA Veh   ● Pedestrian
▨ Other Veh.   ▨ Fixed Object

Draw an arrow pointing north in this circle

ALAMEDA
Show Traffic Control Devices And Landmarks
Label Each Street

NOTE any damage on bus body

LEFT SIDE
RIGHT SIDE
REAR END
FRONT END

RTA000005

39


Name of Employee: Angelo Franzone Date of Incident/Accident 5/4/12 Employee #: 1635

The Stop. The Man Who Had Just got on Deccided That He Wanted Back off The Bus. Angelo Had Moved The Bus Away From The Stop only a Few Feet and Since The Traffic Signal Was Red He Let This Man off The Bus Once. This Man Got off The Bus Angelo Then Began To Pull Away From The Curb, But To The Red Light Traffic Signal. He Stated He Moved The Bus About 15' When The Man That Was Sleeping Had Hurrying After The Bus Trying To Stop It By Reaching out To Hit The Bus. While Trying To Do This He Stumbled And Fell Between The Curb And The Rear Wheel. When He Fell His Arm Had Apparently Went Under The Right Rear Tire.

#C446969

Passenger - Right Side Mirror

#C4446570

87



#CV5441571#

## DEPARTING

Leaving a service stop can be very dangerous. At many stops, you will have passengers standing on the curb next to the bus as you pull away. You need to balance the need for safety with the need to provide service.

### General Steps

☒ Look at the doors while closing them.

☒ Make sure passengers with mobility problems or passengers with their hands full of packages, children, etc., are seated before moving bus.

☒ Make sure standees are behind the line.

☒ Check your right mirror for passengers running to catch bus.

To prevent collisions give passengers with mobility problems, packages or intoxicated passengers .. *More Time And More Distance!*

> ### Give more time or distance
>
> ○ *Let passengers be seated;*
>
> ○ *Let intoxicated customers move away for the bus before driving.*

Notes:

_____

_____

_____

_____

## PROCEDURES

1. Make sure passengers have boarded or exited the bus.
2. Collect fares and have passengers move behind the line before moving bus.
3. Watch the doors close.
4. Check to see if all passengers with mobility problems or passengers with packages, etc. are seated.
5. Signal and check the left mirrors for traffic and then check the right mirror for passengers running for the bus.
6. Take your foot off the brake and pull out using your half of the road.
7. Merge smoothly with traffic and then straighten out the bus.

If your bus is not parallel to the curb and you can not see traffic in your mirror, move out very slowly until you can check for traffic.

## Caution:

○ *When moving around a car remember not to turn too soon. Line up the rear duals of the bus with the parked car before turning.*

○ *False starts cause many collisions and should be avoided.*

Notes:

_____

_____

_____

_____

## PEDESTRIAN INCIDENTS

Pedestrian incidents are extremely serious and must be handled with the highest possible degree of sensitivity and professionalism.

**Basic Procedures:**

- ☒ Stop the bus;

- ☒ Try to determine the extent of the pedestrian's injuries;

- ☒ Immediately call the dispatcher for help;

- ☒ Request police assistance;

- ☒ Get courtesy cards from any witness on or off the bus;

- ☒ Note the details of the collision;

- ☒ Try to get the name of the injured pedestrian.

**Caution**

- ☒ Do not move the injured person unless necessary.

- ☒ Stop heavy bleeding by applying direct pressure to the wound.

- ☒ Keep the injured person comfortable until help arrives.

Notes

_____

_____

_____

_____

_____

RTA000082

162

Filed
10/9/2014 11:51:34 AM
Patsy Perez
District Clerk
Nueces County, Texas

CAUSE NO. 2014-CCV-60671-1

| | | |
|---|---|---|
| **DONNIE DOYLE BROWN** | § | **IN THE COUNTY COURT** |
| (D.O.B.: 10/06/1956) | § | |
| | § | |
| **VS.** | § | **AT LAW # 1** |
| | § | |
| **CORPUS CHRISTI REGIONAL** | § | |
| **TRANSPORTATION AUTHORITY,** | § | |
| **MV CONTRACT** | § | |
| **TRANSPORTATION, INC., AND** | § | |
| **MV TRANSPORTATION, INC., D/B/A** | § | |
| **THE B** | § | **NUECES COUTNY, TEXAS** |

<u>**AFFIDAVIT OF DONNIE DOYLE BROWN**</u>

BEFORE ME, the undersigned official, on this day appeared **Donnie Doyle Brown**, who personally known to me, and first being duly sworn according to law upon his oath deposed and said the following:

"My name is **Donnie Doyle Brown**. I am over the age of 18 years and fully competent to make this Affidavit. The statements contained in this Affidavit are true and correct and based on my personal knowledge.

I, **Donnie Brown**, had a mandatory appointment with MHMR on May 04, 2012 at 4:30PM because I had missed my previous appointment at the end of April. I had no money, at the time, so I was given a bus token from "The Good Samaritan" Rescue Mission; I had made my way to the bus stop while looking for work. This was to be my last bus transfer to MHMR. I sat down to make sure I had all of my paperwork in order required for MHMR around 2:30PM. I soon heard the bus approaching, looked at my watch, and realized he was a little early. I then motioned and waved for him to stop and he did. I noticed by my watch, which I had learned to set to RTA's time that the bus was exactly 5 minutes early and scrambled to gather up my paperwork. An acquaintance from The "Good Samaritan," of which I had not seen or heard from

Page 1 of 2

**EXHIBIT**

111 2

for at least 2 weeks, suddenly shows up and was trying to converse with me but I really couldn't look up and pay attention because when I was organizing my papers I realized that I had forgotten a key document and tried to remember where I had put it. By the time I was ready to board the bus with my transfer ticket the bus was already pulling very slowly away so I walked after the bus with the ticket in my left hand yelling and banging on the bus and I could hear and see the passengers screaming for the bus driver to stop the bus and he wouldn't. The doors were still opened so I attempted to board the bus with my left hand. Suddenly the doors closed. I could not get free and was dragged until I tripped and was freed and fell under the rear wheels. That's all I remember about the accident. I must have gone into shock.

My lawyer has told me there are reports I was intoxicated at the time of the accident. I was not and had not been drinking alcoholic beverages before the bus accident and I was not intoxicated at the time of the accident.

_____
Donnie Doyle Brown

SWORN TO and SUBSCRIBED before me by the said **Donnie Doyle Brown**, under my official hand and seal of office on this the ⟨7th⟩ day of October, 2014.

_____
Notary Public, State of Texas

AMYRA VERA
Notary Public, State of Texas
My Commission Expires
January 08, 2018



# Audit: RTA should work on reducing accidents, preventing breakdowns, keeping buses cleaner

## Accidents, cleanliness among chief concerns

By Rhiannon Meyers

Friday, December 28, 2012

CORPUS CHRISTI —The Regional Transportation Authority should work on reducing accidents, preventing breakdowns and keeping buses cleaner, a recent audit found.

State law requires some public transportation agencies to undergo an audit every four years examining performance, including accidents, number of miles between road calls and the amount of fare collected versus total operations cost.

The RTA also asked auditors this time to review its maintenance department. They noted a number of concerns that prompted board members at a recent committee hearing to ask CEO Scott Neeley to take steps to improve the department.

"This was a great report and I feel like things like this are good for our agency because it sheds light on the improvements we need to make," board member Tony Elizondo said at a recent committee meeting. "I don't get heartbroken over being critiqued or criticized. I see it as an opportunity to improve on the great things we have here."

Auditors reviewing data from 2008 to 2011 made myriad recommendations to improve the agency's safety and efficiency. The RTA will have a public hearing about the findings Jan. 9 before preparing a response, which will be sent to state officials.

Accidents were among the top concerns noted by auditors. They reached their highest point in 2011 with 4.75 accidents per 100,000 miles, a number that includes both preventable and non-preventable accidents, such as times when a bus is rear-ended by a car. Industry standard is two accidents per 100,000 miles, Neeley said.

The RTA recorded about 60 accidents in 2011, ranging from serious, including one time when a bus struck and killed a pedestrian, to minor, including times when drivers misjudged the height of curbs and the proximity of signs, poles and hydrants, scratching, denting and scraping buses, according to an RTA database of such incidents.

About half of the 2011 accidents were preventable, the RTA found. In at least 10 cases, RTA vehicles were rear-ended by other vehicles, according to the agency's safety and security logs.

106

Neeley said RTA plans to address the increasing accident rate by conducting "ride checks," or ride-alongs with drivers to watch their driving behavior, and more intensive post-accident education sessions.

Auditors also recommended the RTA improve its fare recovery rate.

The RTA charges a base fare of 75 cents per trip, with discounts for seniors, people with disabilities and children. Revenue from the fare, which is low compared to other transit agencies, covered less than 7 percent of the cost to operate the bus system. Other agencies typically have a higher fare recovery rate of 10 to 15 percent, Neeley said.

The agency has no immediate plans to increase its fare, a slow process that requires committee input. Neeley said the RTA has tried instead to keep costs in check by trimming services that are inefficient or poorly used.

"We're being frugal enough with our money that we don't have to pass that burden off to our customers," he said.

While auditors found a well-staffed maintenance department performing regular preventive maintenance, good quality work and having few repeat mechanical failures, they also found a number of concerns, including an outdated plan, a section of the shop that is cluttered and messy and a lack of maintenance training.

Board members have asked Neeley to take a close look at the maintenance department and provide updates on planned improvements.

"We need to get our maintenance department back to where it needs to be," board member Vangie Chapa said.

Auditors also suggested the agency do a better job cleaning the buses and supervisors do a better job inspecting the fleet to ensure it is cleaned. The auditors found trash and litter had not been cleaned from buses; handrails, walls and A/C ducts that were dirty; extensive graffiti on seats and several windshields that were cracked, including on the driver's side.

Rosa Villarreal, the managing director of operations, said turnover is high among the seven-member crew that cleans the RTA's more than 70 buses each night.

They are required to have a commercial drivers license, but they make much less than bus drivers, who got a pay hike in the past year so the RTA could better compete with Eagle Ford Shale businesses paying top dollar for people with similar skills.

When auditors visited, the cleaning crew was down at least two people, she said.

**AUDIT FINDINGS**

Recommendation: Focus on reducing accidents.

Response: The RTA's safety program will be enhanced with "ride checks," which are assessments of driver behavior, regularly scheduled training and post-accident education sessions.

Recommendation: Focus on increasing the fare recovery rate.

Response: The RTA will closely monitor fare recovery rates and regularly present information to directors.

Recommendation: Focus on increasing miles between road calls.

Response: The RTA will further develop a predictive maintenance program designed to reduce the severity of failures and prevent breakdowns from occurring while the vehicle is in service.

The ongoing replacement of older fleet also will improve the miles between road calls.

Recommendation: Develop cleaning procedures, including daily cleaning requirements. Shop supervisors and the maintenance director should inspect vehicles to ensure they are clean.

Response: The RTA has developed procedures, expectations and service standards for bus preservation and quality assurance inspections. These will be incorporated into the maintenance employee guidelines.

Source: 2012 performance audit of the RTA

 © 2014 Scripps Newspaper Group — Online